UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JOHN F. KOCIENSKI,<br><br>Plaintiff(s),<br><br>v.<br><br>NRT TECHNOLOGIES, INC.,<br><br>Defendant(s). | Case No. 2:16-CV-905 JCM (CWH)<br><br>ORDER |

Presently before the court is defendant NRT Technologies, Inc.'s motion for summary judgment. (ECF No. 25). Plaintiff Jack Kocienski filed a response (ECF No. 28), to which defendant replied (ECF No. 31).

**I.  Facts**

In July of 2013, plaintiff, with the recommendation of Steven Johnson, defendant's vice president of gaming North America and general manager of defendant's office in Las Vegas, submitted a resume and application to work as an account executive for defendant. (ECF No. 25). In August 2013, Rosa Laricchia, defendant's senior vice president of sales, conducted a phone interview with plaintiff for the position. *Id*. Defendant alleges that plaintiff's application specified that he was 63 years-old when he applied, Johnson's recommendation informed defendant that plaintiff would be coming out of retirement for the position, and the interview included discussion of plaintiff's work experience. *Id*. Plaintiff alleges that during this initial interview, Laricchia[1] asked plaintiff if he could close deals at his age. (ECF No. 28).

---

[1] Laricchia was 53 years old at the time. (ECF No. 25)

**James C. Mahan**
**U.S. District Judge**

Laricchia approved defendant's hiring of plaintiff. On August 20, 2013, plaintiff signed defendant's employment agreement. (ECF No. 25). The week of September 23, 2013, Laricchia met plaintiff in person for the first time at the "G2E" trade show in Las Vegas. *Id*. Laricchia next saw plaintiff in November 2013, when he flew to Toronto for sales training. *Id*.

At the November training, plaintiff alleges that Laricchia told plaintiff that defendant does not like to hire older people because they could retire in two to three years. (ECF No. 28). Plaintiff also asserts that when leaving that training, he and Laricchia ran into John Dominelli, defendant's president. *Id*. Plaintiff claims that Laricchia told Dominelli[2] that plaintiff planned on retiring at the end of 2017, to which Dominelli responded, "[l]ook at me. I'm older than you, and I'm going to continue to work until I drop." *Id*.

Plaintiff alleges that in November or December of 2013, Dominelli called Johnson and told him, "I think [plaintiff] is too old. We ought to fire him because he's too old." *Id*.

Plaintiff claims that beginning in late 2013 or early 2014 and continuing throughout his employment, Laricchia began calling plaintiff "old man." (ECF No. 28). Plaintiff claims that he told Laricchia not to call him that, but that she continued anyway. *Id*. Plaintiff asserts that Laricchia called him "old man" approximately 50 times.[3] *Id*. Plaintiff claims he informed Johnson about Laricchia calling him "old man." *Id*. Plaintiff also claims that Johnson called him "old man" and "grumpy old man" approximately 100 times. *Id*.

Plaintiff alleges that in the spring of 2014, Laricchia made comments about three other employees being too old for their employment with defendant. (ECF No. 28).

Defendants assert that in early December of 2014, Johnson talked with the sales people in defendant's Las Vegas office about a new employment plan ("new plan") that increased the annual base salary for its account executives and would change several job titles, including plaintiff's,

---

[2] Dominelli was 66 years old at the time. (ECF No. 31)

[3] Defendants allege that plaintiff "admitted that (1) he could not name even one person who witnessed Laricchia's comments; (2) he was only able to provide the dates and circumstances concerning Laricchia calling him "old man" twice; (3) he claimed to have to[ld] his friend Johnson that he did not like being called "old man;" (4) he never told anybody else at NRT that Laricchia called him "old man;" and (5) he never complained to human resources about Laricchia because her alleged comments did not affect his ability to conduct his job." (ECF No. 25)

from account executive to vice president. (ECF No. 25). At the time, the new plan still needed to be approved and Laricchia still needed to conduct due diligence. *Id*.

Less than one week later, Johnson took time off for personal reasons, and Laricchia took over his duties, increasing her workload and requiring her to fly between Toronto and Las Vegas regularly. *Id*. Defendant alleges that, at this time, plaintiff began calling and emailing Laricchia several times per week to see when the new plan would be implemented. *Id*. Laricchia informed plaintiff that she was busy to her increased workload, but reassured him that the new plan "would ultimately be approved, and that even if it was not finalized before the end of the year, it would still be made retroactive to January 1, 2015." *Id*. Defendant alleges that the frequency of emails increased, and plaintiff became "increasingly angry, aggressive, and confrontational" whenever he spoke with Laricchia about why the new plan had not been instituted yet. *Id*.

Defendant claims that around later that month, Laricchia was made aware that plaintiff was being disruptive at work by trying to create dissent among defendant's sales people because he believed the new plan was being delayed without justification. (ECF No. 25). Defendant alleges that on December 31, 2014, plaintiff sent an email to Johnson and all of the other sales people that "voiced his dissatisfaction with [defendant's] sales commission payment structure as well as his job title." *Id*.

Plaintiff asserts that every other sales person in the Las Vegas office, except one, called him because they were upset over the new plan being delayed. (ECF No. 28). Plaintiff also claims that employees "were encouraged to voice any and all complaints" based on the defendant's open door policy. *Id*.

On January 5, 2015, Brenda Hopcroft, defendant's cash management and compliance coordinator, sent plaintiff an e-mail asking him to provide his financial information on a gaming application to the Santa Rosa Rancheria Gaming Commission, the regulatory authority that had jurisdiction over one of plaintiff's clients. (ECF No. 25). Plaintiff responded that he was not going to disclose his financial information. *Id*. Defendant asserts that Laricchia was forced to step in on Hopcroft's behalf, but that plaintiff "tersely" refused again. *Id*.

Defendant alleges that by mid-January, plaintiff was calling and e-mailing Laricchia so often that she felt harassed. *Id*. On January 19, 2015, Laricchia informed plaintiff that she would discuss his concerns with defendant's human resources director, Renee Chang, and have her call him to talk about the new plan. *Id*. Defendant claims that plaintiff sent Laricchia an e-mail response not to have Cheng call him because it would only "fuel the fire more." *Id*.

Defendant claims that on January 22, 2015, plaintiff called Laricchia again regarding the new plan. *Id*. Plaintiff stated again that he was upset that it was not yet instituted. *Id*. Laricchia told him it would be implemented soon and that it would be retroactive, but plaintiff allegedly responded that he no longer trusted Dominelli or Laricchia. *Id*.

On January 23, 2015, Laricchia called Dominelli, informed him about plaintiff's conduct, and recommend to Dominelli that defendant terminate plaintiff's employment. *Id*. Dominelli agreed with Laricchia's recommendation and that defendant had no choice but to immediately terminate plaintiff's employment. *Id*.

On January 23, 2015, after speaking with Dominelli, Laricchia called plaintiff on the telephone and informed him that his employment with defendant was terminated and to contact defendant's human resources if he had questions. *Id*. Plaintiff claims that when he asked why his employment was being terminated, Laricchia told him that defendant did not need to give him a reason. (ECF No. 28). Plaintiff claims that after his termination, defendant hired Rosario Gonzalez, who was 32 and did not have any experience in the type of sales that defendant handled. *Id*.

Plaintiff claims that Laricchia called him "old man" one day prior to his termination. (ECF No. 28). Plaintiff also claims that Dominelli had no issues with plaintiff's sales performance during his employment. *Id*.

Plaintiff claims that after he was terminated, defendant failed to pay him all the wages he was due. (ECF No. 28). On July 13, 2015, and August 7, 2015, plaintiff filed wage claims with the labor commissioner. *Id*. Both claims resolved with defendant paying plaintiff in accordance with an order from the labor commissioner. *Id*.

On August 13, 2015, plaintiff filed his charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 1). The EEOC issued a notice of suit rights on March 17, 2016. *Id.*

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not

consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. Discussion

Defendant asserts that summary judgment should be granted in its favor as to plaintiff's age discrimination claim because plaintiff cannot demonstrate direct or circumstantial evidence that defendant terminated him because of discriminatory animus. (ECF No. 25).

Plaintiff alleges that comments made by the people who made the decision to terminate his employment establish evidence of discriminatory animus and that defendant cannot proffer a legitimate, non-discriminatory reason for his termination. (ECF No. 28).

The Age Discrimination in Employment Act of 1967 ("ADEA") makes it unlawful "to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). "To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the "but-for" cause of the employer's adverse decision." *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 176, 129 S. Ct. 2343, 2350 (2009).

Courts evaluate ADEA claims that are based on circumstantial evidence of discrimination by using the three-stage burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). Under this framework, the employees must first establish a prima facie case of age discrimination. *Id.*

"To establish a prima facie case using circumstantial evidence, the employees must demonstrate that they were (1) members of the protected class (at least age 40); (2) performing their jobs satisfactorily; (3) discharged; and (4) replaced by substantially younger employees with equal or inferior qualifications." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000).

To establish a prima facie case, plaintiffs may also offer evidence that "gives rise to an inference of unlawful discrimination" with direct evidence of discriminatory intent. *Vasquez v. Cty. of L.A.*, 349 F.3d 634, 640 (9th Cir. 2003). Direct evidence is "evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Id*.

If a plaintiff succeeds in establishing a prima facie case of discrimination, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for the alleged discriminatory conduct. *McDonnell Douglas Corp.*, 411 U.S. at 802. If a defendant provides a legitimate, nondiscriminatory reason, then the burden shifts back to the plaintiff to demonstrate that the defendants given reason is mere pretext for discrimination. *Id*. at 804.

"A plaintiff may demonstrate pretext in either of two ways: (1) directly, by showing that unlawful discrimination more likely than not motivated the employer; or (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *Braaten v. Newmont USA Ltd.*, No. 3:15-cv-00174-

LRH-WGC, 2017 U.S. Dist. LEXIS 19210, at *14 (D. Nev. Feb. 10, 2017) (quoting *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112-13 (9th Cir. 2011)). When a plaintiff's offered evidence of pretext is circumstantial, "the plaintiff must produce 'specific' and 'substantial' facts to create a triable issue of pretext." *Id*.

   *a. Direct evidence*

Defendant asserts that if plaintiff attempts to base his discrimination claim upon having direct evidence of discriminatory animus the court should grant summary judgment in favor of defendant because "plaintiff admitted in his deposition that he did not have any facts or evidence to support his belief that he had been terminated because of his age." (ECF No. 25).

Plaintiff responds that he has presented direct evidence of discriminatory animus via age-related comments allegedly made by Dominelli and Laricchia, the decision makers in plaintiff's termination. (ECF No. 28).

Plaintiff refers to a comment allegedly made by Dominelli in November or December of 2013. *Id*. Plaintiff alleges that, shortly after plaintiff was hired, Dominelli told Johnson to fire plaintiff because he was "too old" and did not have enough energy. *Id*. Plaintiff also asserts as direct evidence a series of age-related comments made by Laricchia throughout plaintiff's employment at defendant. *Id*. Plaintiff also refers to one specific comment made by Laricchia in November of 2013, when he claims she asked if plaintiff was too old to do the job. *Id*.

Defendant argues that these comments are nothing more than "stray remarks" made over one year prior to plaintiff's termination and, therefore, do not constitute direct evidence. (ECF No. 31).

"'[S]tray' remarks are insufficient to establish discrimination." *EEOC v. Republic Servs., Inc.*, 640 F. Supp. 2d 1267, 1286 (D. Nev. 2009) (quoting *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir. 1990) (citations omitted)). In *Republic Services*, *Inc*., the plaintiff used similar comments to allege direct evidence of age discrimination. 640 F. Supp. 2d at 1286. The court held that "the use of the term "old man" a few times [had] not been connected to [plaintiff's] termination either in conduct or in closeness of time. [The comments were] therefore nothing

more than stray remarks, which [were] insufficient to constitute direct evidence of age discrimination." *Id*.

Here, plaintiff has not demonstrated direct evidence of discriminatory intent. Dominelli's alleged November or December of 2013 comment and Laricchia's alleged November of 2013 question occurred over one year prior to plaintiff's termination. (ECF Nos. 28 & 31). These "stray remarks" do not constitute direct evidence of discriminatory animus. *See Republic Servs., Inc.*, 640 F. Supp. 2d at 1286.

### b. *McDonnell Douglas framework*

For the purposes of its motion, defendant concedes that "[p]laintiff 1) was at least forty years old, (2) that he was terminated, (3) that he was qualified for the job from which he was fired, and (4) that he was replaced by a younger employee." (ECF No. 25). Therefore, conceding in its motion that plaintiff has made a prima facie case of age discrimination, defendant argues that it had a legitimate, nondiscriminatory reason to terminate plaintiff. *Id*. Defendant also asserts that plaintiff cannot provide any evidence that defendant's asserted reasons are mere pretext. *Id*.

Plaintiff claims that he has met his burden under the *McDonnell Douglas* framework to overcome defendant's summary judgment motion. (ECF No. 28). Plaintiff asserts that he has made a prima facie case of age discrimination and that defendant cannot articulate a legitimate, nondiscriminatory reason for his termination. *Id*.

#### i. *Legitimate, nondiscriminatory reason*

Courts have consistently held that they "should not second guess an employer's exercise of its business judgment in making personnel decisions, as long as they are not discriminatory." *Republic Servs., Inc.*, 640 F. Supp. 2d at 1313; *see also Brown v. TA Operating LLC,* No. 3:07-CV-308-ECR-VPC, 2010 U.S. Dist. LEXIS 40667, at *16 (D. Nev. Apr. 23, 2010).

Defendant asserts that plaintiff's employment was terminated for the legitimate reason of plaintiff's insubordination and the following other specific reasons:

> (1) Plaintiff told Ms. Laricchia that he did not trust her or Mr. Dominelli, who were his bosses; (2) for almost two months, on a weekly basis, Plaintiff continuously harassed, badgered, and criticized Ms. Laricchia about the New Plan, despite her repeated assurances and promises that it would be approved and implemented retroactively to January 1, 2015; (3) Plaintiff was repeatedly insubordinate and condescending towards Ms. Laricchia; (4) Plaintiff repeatedly told Ms. Larrichia how to do her job; (5) Plaintiff was continually trying to interfere with and sow

dissent among NRT's relationships with its other sales personnel; and (6) Plaintiff refused to provide his personal financial information on NRT's application to the Santa Rosa Rancheria Gaming Commission, which Plaintiff knew was a job requirement.

(ECF No. 25).

The court holds these proffered reasons serve as legitimate, nondiscriminatory business reasons to terminate plaintiff's employment.

### ii. Pretext

Because defendant has proffered sufficient, non-discriminatory reasons for plaintiff's termination, plaintiff must establish that defendant's reasons were pretext for his termination and that his age was the "but-for" reason for his termination. *Gross*, 557 U.S. at 176.

A plaintiff may "show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence." *Vasquez*, 349 F.3d at 641. Where, as here, the plaintiff asserts pretext with support of only circumstantial evidence, "the plaintiff must produce 'specific' and 'substantial' facts to create a triable issue of pretext." *Braaten*, 2017 U.S. Dist. LEXIS 19210, at *14 (quoting *Earl*, 658 F.3d 1108, 1112-13).

"[W]here the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive." *Republic Serv., Inc.*, 640 F. Supp. 2d at 1301 (quoting *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270-71 (9th Cir. 1996)); *see Lowe v. J.B. Hunt Transp., Inc.*, 963 F.2d 173 (8th Cir. 1992) (finding argument that defendant developed animus to older people less than two years after hiring member of protected age group "simply incredible"); *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 464 (6th Cir. 1995) ("An individual who is willing to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class.").

In *McCoy v. Barrick Gold of North America, Inc.*, the court held that:

any pretext argument [here] is without merit given the fact that McCoy was first hired by Barrick when he was 52 years old, and that Olsen, the individual who ultimately made the decision to terminate McCoy's employment, also made the decision to promote McCoy to leach pad crew in 2011 when he was 58 years old.

James C. Mahan
U.S. District Judge

- 10 -

No. 3:15-cv-0188-LRH-WGC, 2016 U.S. Dist. LEXIS 132417, at *10 (D. Nev. Sep. 27, 2016). The court further explained that, "[o]n such facts, [defendant] is entitled to a "strong inference" [plaintiff's] age was not the but-for cause of his termination." *Id*.

Here, because Laricchia was the person who hired plaintiff and the person who terminated plaintiff's employment, a "strong inference" arises that plaintiff's age was not the but-for cause of his termination. *See Id*.

Plaintiff's motion addresses some of the specific reasons defendant gave for plaintiff's termination. Plaintiff argues that if his allegedly abusive behavior to Laricchia was the reason for his termination, that Laricchia would have included it as an explanation in his termination of employment. *Id*. Plaintiff also argues that his refusal to give financial information to the Santa Rosa Rancheria Gaming Commission is not a legitimate reason for termination because Johnson resolved the issue by assigning the client to another employee. *Id*.

Plaintiff's response does not demonstrate that defendant's proffered reasons for terminating plaintiff were not legitimate and nondiscriminatory. Therefore, plaintiff has not sufficiently demonstrated that those reasons are pretext.

**IV.  Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's motion (ECF No. 25) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant's stipulation for extension of time to file a reply in support of its motion for summary judgment (ECF No. 29) be, and the same hereby, is GRANTED.

The clerk shall enter judgment accordingly and close the case.

DATED March 15, 2018.

_____
UNITED STATES DISTRICT JUDGE